**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REZA TOULABI,<br>Plaintiff<br><br>v.<br><br>MOHAMMED TARIQ SIDDIQUI,<br>TLC CONSULTANTS, INC., and<br>REZA'S OF OAKBROOK INC.,<br>Defendants | No. 25 CV 9228<br><br>Judge Jeremy C. Daniel |

**ORDER**

Defendant TLC Consultants, Inc. motion to dismiss [38] is granted in part and denied in part. Specifically, it is granted as to Count XI and denied as to Counts II, V, VIII, XIV, XVII, XX, XXIII, and XXV. Defendant Siddiqui's motion to dismiss [39] is granted in part and denied in part. Specifically, it is granted as to Count X and denied as to Counts I, IV, VII, XIII, XVI, XIX, and XXII. The defendants shall answer the remaining claims on or before September 11, 2026. Scheduling conference set for October 8, 2026, at 2:20 p.m. The parties shall confer pursuant to Fed. R. Civ. P. 26(f) on or before September 17, 2026. The parties shall file their Rule 26(f)(2) report on or before October 1, 2026. The parties' report should include proposed deadlines: to join parties; to amend the pleadings; close of fact discovery; close of expert discovery; to file Daubert motions; and to file dispositive motions. Each party shall make its Rule 26(a)(1) initial disclosures on or before October 1, 2026. The scheduling conference will be held via WebEx using the following link: https://us-courts.webex.com/meet/Judge_Daniel. Alternatively, if you do not have access to a device with video capability, you may use the following dial-in: (650)-479-3207, the access code is: 2315 750 8728.

**STATEMENT**

**Background**

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving this motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiff Reza Toulabi opened a restaurant named "Reza's" in Chicago, Illinois on or about December 15, 1984. (R. 34 ¶ 10.) The restaurant "became known as one that specialized and served to its patrons Persian and Mediterranean Cuisine." (*Id.* ¶ 13.) The plaintiff generated profits and

goodwill under the trade name and mark "Reza's." (*Id.* ¶ 33.) Since 2004, the plaintiff has opened additional restaurants under the name "Reza's," including the restaurant in Oakbrook, Illinois. (*Id.* ¶ 12.) The plaintiff and his business associates formed multiple Illinois corporations, including "Reza's of Oak Brook, Inc." and "Reza Oakbrook, Inc." (*Id.* ¶ 15.) The plaintiff ceased operating his restaurant in Oakbrook in early 2024. (*Id.* ¶ 16.) On May 27, 2025, the plaintiff obtained and registered the trademark "Reza's" on the Principal Register of the United States Patent and Trademark Office, with first use in commerce on January 1, 1983. (*Id.* at 38.)

The defendants are not affiliated with the plaintiff or his restaurant associates. (*Id.* ¶ 17.) Defendant Mohammed Tariq Siddiqui formed an Illinois corporation, Defendant Reza's of Oakbrook, Inc., ("Reza's of Oakbrook") on or about April 29, 2024. (*Id.* ¶ 18.) Defendants TLC Consultants, Inc. ("TLC") and Siddiqui bought the property on which the "Reza's" Oakbrook location operated on or about May 30, 2024. (*Id.* ¶ 21.) The defendants' restaurant is named "Reza's restaurant" and serves Persian and Mediterranean food. (*Id.* ¶ 19, 23.) The menu and website of the plaintiff's restaurant and the defendants' restaurant contain multiple similarities. (*Id.* ¶ 25; *see also id.* at 28–37, 39–46.) The defendants' website allegedly falsely claims that "Reza's restaurant" is "under new management." (*Id.* ¶ 26.) The defendants additionally advertise that they acquired the restaurant in Oakbrook. (*Id.* ¶ 31.) The plaintiff claims that his restaurant in Oakbrook was not sold to the defendants or anyone else, and the defendants did not acquire the restaurant from him. (*Id.* ¶¶ 27, 32.) The plaintiff sent a Cease and Desist letter to the defendants on September 6, 2024, "informing Defendants that their use of the Reza's name and Mark, media imaging, signage and other such devices, constituted an infringement on Plaintiff's rights and property." (*Id.* ¶ 39.) The defendants closed and then reopened the restaurant shortly thereafter. (*Id.* ¶¶ 41–42.)

The plaintiff brings claims against all defendants for (1) false designation, trademark infringement, false advertising, dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.* (Counts I–XII); (2) unfair competition under Illinois common law (Counts XIII–XV); (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, *et seq.* (Counts XVI–XVIII); (4) violations of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 ILCS 510/1, et seq. (Counts XIX–XXI); and (5) unjust enrichment under Illinois common law (Counts XXII–XXIV). (*See generally* R. 34.) He brings further claims for recovery under *respondeat superior* against TLC and Reza's of Oakbrook (Counts XXV–XXVI). (*Id.*) Siddiqui and TLC move to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Defendant Reza's of Oakbrook does not move to dismiss.

**<u>Legal Standard</u>**

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face and has raised a right

to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). The Court accepts as true all well-pled factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where the allegations, "however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## <u>Analysis</u>

### Trademark Infringement and False Designation of Origin

"[T]o succeed on a trademark infringement claim, the claimant must show that it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023) (citing *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019)); *see* 15 U.S.C. § 1114(1). Similarly, under 15 U.S.C. § 1125(a), "a plaintiff making a claim of false designation of origin must show that the mark is entitled to protection as a trademark, and that the false designation of origin creates a likelihood of confusion." *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997) (citations omitted); *see* 15 U.S.C. § 1125(a)(1). However, for false designation, the "count is 'based on' unregistered, common law rights, not on the mark as registered." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:18 (5th ed. 2026).

To be eligible for trademark protection under the Lanham Act, "a mark [must] be both distinctive and used in commerce." *Slep–Tone Entertainment Corp v. Elwood Enters., Inc.*, 165 F. Supp. 3d 705, 710 (N.D. Ill. May 1, 2015). "An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (emphasis in original).

The plaintiff alleges that through continued use, the name "Reza's" has become distinctive with a strong secondary meaning. (R. 34 ¶ 33.) He generated substantial profits and goodwill under the name, and his restaurant allegedly became known for specializing in Persian and Mediterranean cuisine. (*Id.* ¶ 13, 33.) As the plaintiff alleges that his mark has acquired distinctiveness through secondary meaning, he sufficiently pleads a protectable trademark.

The Lanham Act defines "use in commerce" to be "the bona fide use of a trademark or service mark in either interstate or foreign commerce in the ordinary course of trade." *Slep–Tone Entertainment*, 165 F. Supp. 3d at 710; *see* 15 U.S.C. § 1127. "The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it." *Johnny Blastoff, Inc. v. L.A.*

*Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999). The plaintiff's use in commerce is established as of January 1, 1983, according to his federal trademark registration. (R. 34 at 38.) Therefore, he has alleged superior rights to it.

The likelihood of confusion inquiry is a "fact intensive analysis, [which] ordinarily does not lend itself to a motion to dismiss." *Slep–Tone Entertainment Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. May 8, 2014) (citation omitted). "Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestions; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' his product as that of another." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001).

The plaintiff alleges that the defendants have and are likely to cause confusion, mistake, or to deceive patrons and the general public. (R. 34 ¶ 45.) He references the "strong similarity of name, advertising materials, menu items, and web address." (*Id.* ¶ 43; *see also id.* ¶¶ 6, 14, 25; *id.* at 28–37, 39–46.) He also provides examples of alleged customer confusion. (*Id.* at 48–52.) At this stage, this sufficiently pleads likelihood of confusion. Siddiqui argues that complaint fails to allege that Siddiqui personally used an identical or confusingly similar mark. (R. 39 at 7.) However, the plaintiff alleges use of the mark by Siddiqui, including that Siddiqui formed the Illinois corporation to operate Reza's restaurant. (R. 34 ¶¶ 18–19.) Those allegations are sufficient to state a claim against Siddiqui.

TLC similarly argues that the plaintiff does not allege that TLC used the mark in any capacity. (R. 38 at 5.) However, landlords may be subject to contributory liability as outlined in *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992), discussed *infra*. *See* 955 F.2d at 1149 ("A landowner or landlord may be liable for trademark violations by [its tenant] if it knew or had reason to know of them."). And the allegations are sufficient to state a claim against TLC under a contributory infringement theory. Because the plaintiff has plausibly pled a protectable trademark and likelihood of confusion based on the defendants' alleged use of the disputed mark, the trademark infringement and false designation claims survive.

Similarly, the plaintiff's claims for violations of the ICFA, the IUDTPA, and unfair competition under Illinois common law survive based on these same elements. *See Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. Mar. 26, 2001) (citing *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997)) ("This same analysis [as the federal trademark infringement claim] applies to. . . [the plaintiff's] unfair trade practices claims under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive

Business Practices Act, and its. . . unfair competition claims under Illinois common law.").

The defendants argue that the plaintiff abandoned the "Reza's" mark because (1) the plaintiff's complaint states that he ceased operating the Oakbrook location, which is allegedly a judicial admission of nonuse; and (2) the complaint contains no allegation of intent to resume use. (R. 39 at 3–4.) Under 15 U.S.C. § 1127, abandonment of a mark is an affirmative defense to a trademark infringement action. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954–55 (7th Cir. 1992). "Generally, affirmative defenses are not grounds for dismissal at the complaint stage and a plaintiff need not anticipate affirmative defenses in his complaint in order to survive a motion to dismiss." *Angiulo v. United States*, 867 F. Supp. 2d 990, 996–97 (N.D. Ill. 2012) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Here, where the issues underlying abandonment likely depend on facts that exist outside of the pleadings, the Court declines to adjudicate them at this juncture. *See Grubhub*, 80 F.4th at 845.

Therefore, the plaintiff's claims for trademark infringement and false designation under the Lanham Act, as well as his claims under ICFA, IUDTPA, and for unfair competition, survive. The Court denies the defendants' motions to dismiss as to Counts I, II, IV, V, XIII, XIV, XVI, XVII, XIX, and XX.

**False Advertising**

To establish a claim under the false advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); 15 U.S.C. § 1125(a). When the statement is actually false, "the plaintiff need not show that the statement either actually deceived consumers or was likely to do so." When the statement is literally true or ambiguous, "the plaintiff is obliged to prove that the statement is 'misleading in context, as demonstrated by actual consumer confusion.'" *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971–72 (7th Cir. 1999).

The plaintiff sufficiently pleads a false statement of fact by the defendant in a commercial advertisement. The website allegedly falsely states that "Reza's restaurant" is "under new management." (R. 34 ¶ 26.) The plaintiff's restaurant in Oak Brook was allegedly "not sold in any form to Defendants or anyone else." (*Id.* ¶ 27.) The defendants advertise that they acquired Reza's restaurant in Oak Brook, but the plaintiff pleads that they did not acquire it. (*Id.* ¶¶ 31–32.) Though Siddiqui argues that the defendants' statements are factually accurate, these arguments respond to the factual allegations and therefore are not relevant at the motion to dismiss stage. (R. 39 at 8–9.) Moreover, these arguments do not address whether the statements were misleading in context.

The plaintiff provides examples of plausible customer confusion based on these advertisements, namely online customer reviews of Reza's restaurant. (R. 34 ¶ 38.) One review, for example, states that the "'new' Rezas" that "used to be great food for many years is now simply disappointing." (*Id.* at 49.) Another review states that for "this restaurant under new management," the "standard of previous reza kabobs is not there now." (*Id.* at 50.) The plaintiff also provides responses by the "Business Owner" stating that: "As the new management team at Reza's in Oakbrook, we're working hard to rebuild and bring a fresh experience while honoring the Reza's tradition." (*Id.*)

The plaintiff sufficiently pleads that the deception is material. For example, one review states that they are "[n]ever going back there again," and another that they "will unfortunately not be visiting again." (*Id.* 48–49.) Another customer includes a health department report citing multiple violations. (*Id.* 50–51.)

The defendants plausibly caused this false statement to enter interstate commerce because its website states that "Reza's restaurant" is "under new management." (*Id.* ¶ 26.) A website "is an avenue of interstate commerce," and "the Internet . . . crosses state and indeed international boundaries." *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007).

The plaintiff alleges that he is likely to be injured by at least a loss of goodwill associated with his products. The plaintiff alleges that the defendants "are selling or distributing a vastly inferior product at Defendant Reza's of Oakbrook restaurant." (R. 34 ¶ 37.) This allegation is further supported by the online customer reviews discussed above. Therefore, the Court denies the motion to dismiss as to Counts VII and VIII.

**Dilution**

A dilution claim provides added protection for the "owner of a famous mark that is distinctive, inherently or through acquired distinctiveness." 15 U.S.C. §1125(c)(1).

The "mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. §1125(c)(2)(A). The statutory definition of fame "was amended in October 2006 to use 'the general public' as the benchmark. This change eliminated any possibility of 'niche fame,' which some courts had recognized before the amendment." *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007). The plaintiff does not sufficiently plead that the mark is famous or recognized by the general consuming public of the United States. The allegations only concern restaurants in Illinois and no claims are made about more general fame. Therefore, the Court grants the defendants' motions to dismiss as to Counts X and XI.

**Unjust Enrichment**

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Banco Panamericano, Inc. v. City of Peoria, Illinois*, 880 F.3d 329, 333 (7th Cir. 2018) (citation omitted).

The plaintiff alleges that defendants received a benefit from "copying Plaintiff's menu, sign, website and brand identity by attracting customers who believed they were patronizing one of Plaintiff's restaurants." (R. 34 ¶ 113–14.) This benefit included revenue and profits from customers who were allegedly deceived by the defendants' conduct. (*Id.* ¶ 115.)

The benefit was allegedly to the plaintiff's detriment because "[c]ustomers were diverted from Plaintiff's restaurant to Defendant's restaurant based on the false representation of acquisition and the copied elements of Plaintiff's brand." (*Id.* ¶¶ 116–17.) Although it is true that the plaintiff closed the Reza's Oakbrook location before the defendants' Oakbrook restaurant was opened, it is plausible that customers who may have traveled to another of the plaintiff's restaurant locations were diverted to the defendants' restaurant. Also, "Defendant capitalized on Plaintiff's goodwill and reputation without authorization or compensation." (*Id.* ¶ 118.) "Loss of goodwill or business reputation are recognized by courts in Illinois to be injuries for which money damages are inadequate." *Consumer Sales & Marketing, Inc. v. Digital Equipment Corp.*, 1995 WL 548765, at *4 (N.D. Ill. Sept. 13, 1995). Therefore, loss of goodwill and reputation are additional plausible harms suffered by the plaintiff as a result of the defendants' alleged conduct.

The plaintiff argues that "[i]t would be unjust and inequitable to allow Defendant to retain profits derived from copying Plaintiff's brand and falsely claiming to have acquired Plaintiff's restaurant." (R. 34 ¶ 121.) The Court finds that, based on the facts as pled, defendants' retention of their alleged benefit may violate these principles. Accordingly, the Court denies the motions to dismiss as to Counts XXII and XXIII.

**TLC's Liability and *Respondeat Superior***

TLC argues that the *respondeat superior* claim against TLC fails because "[t]here are no factual allegations that any conduct was performed on behalf of TLC or within the scope of any purported employment by TLC." (R. 38 at 7.) The Court denies TLC's motion to dismiss as to *respondeat superior* because *respondeat superior* is a theory of recovery, which is not considered at the motion to dismiss stage. *See Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability."). For each claim that survives against Siddiqui, the respondeat superior claim against TLC also does so.

TLC also argues that the plaintiff did not make particularized allegations against TLC for various counts, requiring dismissal. (*See, e.g.,* R. 38 at 5, 6.) "A landowner or landlord may be liable for trademark violations by [its tenant] if it knew or had reason to know of them." *Hard Rock Café*, 955 F.2d at 1149 (applying *Inwood* standard to landlord/tenant context); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). The plaintiff alleges that Siddiqui, who operates Reza's restaurant of Oakbrook, is the president and secretary of TLC, as well as an employee. (R. 34 ¶ 4.) This suggests knowledge of Siddiqui's operation of the restaurant. Additionally, the plaintiff alleges that TLC received a Cease and Desist Letter from the plaintiff on September 6, 2024. (*Id.* ¶ 39, *see also id.* at 53–54.) The plaintiff finally alleges that TLC "knew at all times relevant that Siddiqui intended to operate and did operate Reza's restaurant of Oakbrook." (*Id.* ¶ 19.) This sufficiently pleads that TLC at least had reason to know of the alleged trademark violations by its tenant and employee, Siddiqui. TLC misstates the standard when it argues that "landlords are not liable for tenant trademark infringement absent control or participation." (R. 38 at 7.) The standard, as outlined in *Hard Rock Café*, includes knowledge.

The Court, accordingly, denies TLC's motion to dismiss as to Count XXV.

Date: August 24, 2026

JEREMY C. DANIEL
United States District Judge